[Civ. No. 17862. First Dist., Div. One. Feb. 17, 1959.]

FLORENCE CAREY et al., Appellants, v. LIMA, SALMON AND TULLY MORTUARY (a Partnership) et al., Respondents.

Melvin M. Belli, Ashe & Pinney, and Van H. Pinney for Appellants.

Robert J. Popelka for Respondents.

WOOD (Fred B.), J.—Plaintiffs brought this action for damages allegedly caused by the negligence of the defendant embalmers in performing their contract to embalm the body of plaintiffs' deceased father and ship it from San Jose, California, to Enid, Oklahoma. Upon the conclusion of the trial the court granted a directed verdict for the defendants.

The body arrived at Enid in a decayed condition, malodorous and dripping fluid. The mental and emotional shock suffered by plaintiffs upon learning that the body was in such a condition made them ill, an element of compensable injury that is within the purview of the legal principles expounded and applied in *Chelini* v. *Nieri,* 32 Cal.2d 480 [196 P.2d 915].

Plaintiffs claim there was evidence that should have gone to the jury on the question of defendants' negligence. They refer to the testimony of Richard M. Parkis, funeral director and mortician, who examined the body upon its arrival at Enid. He expressed the opinion, based upon the condition of the body, that the embalming fluid used in this case had not circulated throughout the body. He also testified that there are several methods whereby an embalmer can determine whether or not the embalming fluid has circulated throughout the body, and if it appears that the fluid has not

circulated in some part of the body an embalmer can pick up an artery in that part and inject embalming fluid in that area; also, when a body is to be shipped one is usually more careful to make sure he has adequate circulation, adequate fluid; you take more precautions in such a case.

Parkis also testified that his morticians worked some 17 to 20 hours upon restoration of this body, and that normally when a body has been shipped from somewhere else there are some small things an embalmer has to do, "but mostly what it has been has been makeup."

The witnesses on both sides were agreed that circulation of the embalming fluid throughout the body is the purpose of a proper embalming job.

Defendant Lima said that with the aid of an assistant he embalmed this body; that during the embalming process and twice a day during the two or three days before shipment he examined the body and from various indicia was satisfied that he had obtained proper circulation of the embalming fluid. There was testimony also that there are a number of factors that may accelerate deterioration.

There resulted a conflict in the evidence. A jury verdict in favor of the defendants would have found support in the evidence. However, it does not appear to us that such evidence would cancel or override Parkis' expert testimony as a matter of law. His testimony would support findings that the defendants did not properly embalm the body, that their conduct in that regard was negligent and was an effective cause of the decomposition of the body and of the consequent injury to the plaintiffs.

Defendants argue that there was no evidence that they contracted to preserve the body for any particular period of time. That is not the point. The jury could infer an implied promise to do a proper job and exercise workmanlike care, especially in the light of defendants' knowledge that the body was to be shipped to Oklahoma where the funeral would be held.

Defendants also contend that the testimony, including that of plaintiffs' witness, Mr. Parkis, makes it equally as possible that other factors caused the result as that improper embalming caused it, and in that situation plaintiffs have failed to carry their burden of proof. Although Mr. Parkis testified as to the variable factors, he did not testify that these are uncontrollable. They are factors that influence the care and method of embalming. Mr. Parkis did testify that "[o]nce

in a while you have something develop, yes, every embalmer will," but this was in response to a question as to whether before bodies are buried, it is uncommon to have to do "some other additional touch up and things like that . . ." The question was not directed at major reconstruction such as was involved here. Mr. Parkis' testimony indicates that, in his opinion, the cause of the body's condition was improper distribution of embalming fluid, a condition that a mortician can determine, and not that it was equally possible that the body could have arrived in the condition it did as a result of other factors over which a mortician has no control.

In this situation, the jury could believe Mr. Parkis' testimony and find for the plaintiffs. It cannot be said that there is "no evidence of sufficient substantiality to support a verdict in favor" of plaintiffs. It was error to direct a verdict for defendants. (See *Sokolow* v. *City of Hope,* 41 Cal.2d 668, 670 [262 P.2d 841].)

■ D. E. Ashworth, an expert witness for the defendants, was asked upon cross-examination "Would you say, from looking at those black and white pictures, that this was a satisfactory job of embalming?" Defendants' objection that this called for the witness' opinion and conclusion on the ultimate fact here, a question for the jury to decide, was sustained.* ■ Although an expert should not be asked to give his opinion as to an ultimate fact in the case when the ultimate fact is one which can be determined from common experience (*Hogan* v. *Miller,* 153 Cal.App.2d 107 [314 P.2d 230]; *Sappenfield* v. *Main St. etc. R. R. Co.,* 91 Cal. 48, 60 [27 P. 590]), "the decisive consideration in determining the admissibility of expert opinion evidence is whether the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (*People* v. *Cole,* 47 Cal. 2d 99, 103 [301 P.2d 854, 56 A.L.R.2d 1435].) ■ Applying this principle, the court in the Cole case held that expert testimony was not inadmissible merely because it coincided with an ultimate issue of fact in the case. (P. 105 of 47 Cal. 2d. See also *Wells Truckways, Ltd.* v. *Cebrian,* 122 Cal.App.2d

*A like objection was made by defendants to a question asked of plaintiffs' expert "whether or not a workmanlike job had been done in embalming this particular body." It is not clear from the record that a ruling thereon was made. Plaintiffs apparently did not press for a ruling and took up another subject with the witness.

666, 678 [265 P.2d 557].) However, the court in the Cole case also observed that where "expert opinion evidence is offered, much must be left to the discretion of the trial court." (P. 105 of 47 Cal.2d.) Here, exclusion of the testimony may not have been an abuse of such discretion because in this case there was evidence that the object of proper embalming was to distribute the fluid throughout the body and Mr. Parkis testified that it appeared to him that such was not done here. Accordingly, the jury might have concluded that the job was not properly done. Thus the evidence in the case sufficiently explained the process and the desired results, so as to enable the jury to form their own conclusions without further aid of an expert.

Therefore, although it would appear erroneous to sustain the objection if the question were considered out of context, the sustaining of the objection could not be a basis for reversal of the judgment here. An abuse of discretion does not clearly appear, because the court may have determined that the answer might be given too much weight by the jury and that the testimony might in effect have been cumulative because the jury was sufficiently apprised of the basis for their own determination of the issue.

Moreover, it did not appear whether Ashworth's answer would be favorable to the examiner. In such a case "before the ruling will be reviewed on appeal an offer of what is proposed to be proven must first be made to the trial court so that the reviewing court may determine whether the evidence would be beneficial to the party offering it." (*Ogden* v. *Title Ins. & Trust Co.*, 129 Cal.App.2d 26, 28 [276 P.2d 146]. See also *Hogan* v. *Miller*, 153 Cal.App.2d 107, 116 [314 P.2d 230] ; *Duff* v. *Schaeffer Ambulance Service, Inc.*, 132 Cal.App.2d 655, 671 [283 P.2d 91].)

 The plaintiffs introduced into evidence seven black and white photographs of the body. Later they attempted to introduce two color transparencies of the body. The court, in refusing to admit the color pictures into evidence, stated, "These are the same pictures, as I understand it, as the others, except they're in color, and he's testified to the condition of the body. I can't see any further purpose for additional pictures. They are the same." Plaintiffs' counsel did not point out any differences in the pictures, although now he contends the excluded photographs "displayed the condition of the body in a different manner than—and one more readily apparent to the jury than the black and white photographs." Al-

though the color photographs might have been more vivid, plaintiffs do not contend that the black and white photographs were not adequate. In view of this, and the testimony describing the condition of the body, the colored photographs were properly rejected as cumulative.

The judgment is reversed.

Peters, P. J., and Bray, J., concurred.