[Civ. No. 32895.   Second Dist., Div. Five.   Sept. 18, 1969.]

DEBORAH MAJETICH, a Minor, etc., Plaintiff and Appellant, v. G. WILBUR WESTIN, Defendant and Respondent.

Silverton & Silverton and Max Abrams for Plaintiff and Appellant.

Bonne & Jones and Kenneth N. Mueller for Defendant and Respondent.

STEPHENS, Acting P. J.—This is an appeal by plaintiff from an adverse judgment in a malpractice action. The malpractice was alleged to cover all of the treatment, surgical and post-operative, but the court submitted to the jury only the single issue of the alleged failure of defendant Dr. Westin to perform post-operative care of plaintiff-patient according to the standard of care prevailing in the community. Except as is necessary in discussing a jury instruction claimed to be in part erroneous, we confine the statement of facts to the period after surgery.

The injury is claimed to be nerve damage, necrosis of tissue, and muscular atrophy of plaintiff's left leg caused by a post-operative infection which developed in the surgical site. The surgery was one to correct a foot-drop condition in the left leg of an 8-year-old girl. She had formerly successfully undergone a similar operation to her right foot and leg, and this prior operation is but most tangentially within the evidence in the instant case, the result having been all that anyone hoped for.

The second surgery was performed by Dr. Westin on May 31, 1963. Other doctors assisted, but both the operation itself and the post-operative care of the patient were primarily the obligation of Dr. Westin. On June 6, six days after the operation, Dr. Westin suspected infection of the leg and examined it, taking a culture of the discharge from one of the surgical incisions. He ordered a "broad spectrum" of antibiotics. The following day, June 7, gross puss was noted, and the wound was opened for drainage. The infection was determined to be "staphylococcus aureus coagulase positive, hemolytic." Ultimately, the infection subsided, but, as the defendant's brief succinctly states, "the surgery of May 31 was rendered unsuccessful by this gross infection and the underlying severe necrosis."

The testimony of defendant's medical experts was generally to the effect that the procedures and diagnoses during the post-operative period were proper and that the unfortunate result was not due to malpractice. To contravene this evidence, plaintiff offered the testimony of her own expert, Dr. Arthur Simon.

Dr. Simon testified that he examined plaintiff the first day of the trial, noted the marked left foot drop, barely percepti-

ble dorsiflexion of the left foot, and anasthesia of part of the left foot. His opinion was that her condition was permanent. His qualifications were presented with respect to rendering an opinion as to the nature and standard of post-operative care in the type of surgery involved in such a case. He then testified that defendant Westin had not met that standard: "Q. You stated, Doctor, that it was your opinion that the defendant, Dr. Westin, fell below the standard of postoperative care, skill and diligence ordinarily possessed by an orthopedic surgeon in this community in 1963—[interruption by objection which was overruled] What did you base your opinion on Doctor? A. I based my opinion on having reviewed the records and on my knowledge that there are certain standards required in the treatment of postoperative wound infections which I feel were not followed. Q. Now, what were those, Doctor? A. This patient had a wound infection which resulted in necrosis, which means that it was the—the infection was of a severe enough nature to have destroyed muscle tissue and skin. And it is incumbent upon the doctor in charge of the patient to recognize the infection early enough to start antibiotic therapy and also to establish drainage. And my review of the records shows that this wasn't done until about the sixth day postoperatively. It is also very possible that as a result of comparing the hematocrits, that there was more blood loss than what was stated. . . . It's very possible that this patient had a hematoma; that even though there was a small amount of blood stain in the cast, there still could have been a large collection of blood beneath the skin, subcutaneously, that could have caused pressure necrosis of the tissues involved."

A subsequent question and answer is as follows: "Q. Doctor, do you have an opinion as to whether failure by this defendant [Dr. Westin] to give the antibiotics sooner, or look at the infection sooner or institute drainage sooner, that this caused any damage to this plaintiff patient? A. I would say yes." The witness enlarged upon his answer by stating: "The opinion is, if he [Dr. Westin] had instituted drainage sooner; if he started antibiotic therapy sooner, that possibly there would not have been the tissue necrosis that did occur."

The witness, prior to the above-quoted testimony, had been asked whether in his opinion the defendant's failure to meet the standard was the proximate cause of plaintiff's injuries. Defendant's objection was sustained on the ground that the

question called for a legal conclusion and that it was a matter for the jury to determine.

The first contention on appeal is that it was error for the court to sustain the objection to the question of proximate cause.

The case of *Smith* v. *Lockheed Propulsion Co.*, 247 Cal.App. 2d 774, 780 [56 Cal.Rptr. 128], states the applicable rule as follows: "It is axiomatic that an essential element of a plaintiff's cause of action, whether based on negligence or strict liability, is the existence of a causal connection between defendant's act and the injury which plaintiff suffered. (Prosser, Law of Torts, (2d ed. 1955) p. 218 et seq.) [¶] Cause in fact, as well as proximate cause, is ordinarily a fact question for the jury. (*Basin Oil Co.* v. *Baash-Ross Tool Co.*, 125 Cal.App.2d 578, 603-604 [271 P.2d 122]; *Ishmael* v. *Millington*, 241 Cal.App.2d 520, 525 [50 Cal.Rptr. 592]; *Burdette* v. *Rollefson Constr. Co.*, 52 Cal.2d 720, 726 [344 P.2d 307] Rest.2d Torts, § 434.) "

And on page 783 of *Smith* it is stated: "The fact that an expert's opinion is on an ultimate issue to be determined by a jury is not ground for its exclusion. (*People* v. *Cole*, 47 Cal.2d 99, 103 [301 P.2d 854, 56 A.L.R.2d 1435]; *Magee* v. *Wyeth Laboratories, Inc.*, 214 Cal.App.2d 340, 357 [29 Cal. Rptr. 322]; *Carey* v. *Lima, Salmon & Tully Mortuary*, 168 Cal.App.2d 42, 45-46 [335 P.2d 181]).

"The crucial consideration in determining whether expert testimony should be received is whether '. . . the subject of the inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' (*People* v. *Cole, supra*, 47 Cal.2d 99, 103; Witkin, Cal. Evidence, (2d ed. 1966) § 409, p. 367). Expert testimony is admissible for the purpose of showing recognized accepted standards of practice in the professions. (Witkin, Cal. Evidence, (2d ed. 1966) § 420 p. 380)."

The exclusionary ruling in the case at bar was erroneous. However, under the circumstances, the error does not require reversal. (*People* v. *Watson*, 46 Cal.2d 818, 835-836 [299 P.2d 243].) Here, the expert testimony subsequently admitted adequately covered the subject matter of the causal conclusion with the exception of the word "proximate," and hence no prejudice resulted.

■ The second contention on appeal is that error occurred in giving of an instruction, BAJI 214-A (Revised).[1]

■ An instruction is erroneous if, though abstractly correct as a statement of law, it is not within the issues developed by the evidence or reasonable inferences therefrom. And if it is likely to mislead the jury, the error is prejudicial. (*Arundel* v. *Turk* (1936) 16 Cal.App.2d 293, 297 [60 P.2d 486].) ■ The contention is that paragraphs 1, 3 and 4 were applicable to the case, but that the second paragraph should have been omitted inasmuch as there was no evidence from either of the parties to the effect that there were alternative recognized methods of diagnosis or treatment in plaintiff's post-operative care, as contrasted with the extensive testimony regarding alternative methods of diagnosis and treatment during the surgery involved in the case.

Every medical witness who testified in this case stated that patient post-operative responses differ widely, that symptoms can mean different things, depending on the over-all clinical picture of the patient. Drs. Westin, Monsen and Harvey, all orthopedic surgeons with vast experience, testified as to the difficulties and uncertainties involved in the interpretation of the patient's post-operative symptoms and complaints. They each gave opinions that to institute antibiotics too early can be hazardous, as can be the removal of the cast too soon after the surgery and without adequate indications. Dr. Simon testified that medicine is not an exact science, but involves the exercise of clinical judgment by the attending physician, and he characterized as "alternative" any earlier administration of antibiotics, earlier look at the incisions, or earlier institu-

---

[1]BAJI 214-A, reading as follows: ''The law does not condemn a physician simply because his efforts prove unsuccessful. No practitioner can guarantee results.

''Where there is more than one recognized method of diagnosis or treatment and no one of them is used exclusively and uniformly by all practitioners of good standing, a physician and surgeon is not negligent if, in exercising his best judgment, he selects one of the approved methods, which later turns out to be a wrong selection, or one not favored by certain other practitioners.

''It is quite possible for a physician and surgeon to err in judgment, or to be unsuccessful in his treatment, or to disagree with others of his profession, without being negligent.

''On the other hand, if a physician and surgeon does not possess that degree of learning and skill ordinarily possessed by physicians and surgeons of good standing practicing in the same or a similar locality and under similar circumstances or if he fails to exercise the care ordinarily exercised by reputable members of his profession in the same or a similar locality and under similar circumstances it is no defense to a charge of negligence that he did the best he could.''

tion of drainage. All of these factors make BAJI 214-A applicable in its entirety. (*Meier* v. *Ross General Hospital,* 69 Cal.2d 420 [71 Cal.Rptr. 903, 445 P.2d 519].)

The judgment is affirmed.

Aiso, J., and Reppy, J., concurred.