STATE OF HAWAII, BY ITS ATTORNEY
GENERAL, BERT T. KOBAYASHI
*v.* MAURICE ZIMRING,. ET AL.

No. 4859.

DECEMBER 31, 1970.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON, JJ.,
AND CIRCUIT JUDGE WONG IN PLACE OF
KOBAYASHI, J., DISQUALIFIED.

OPINION OF THE COURT BY MARUMOTO, J.

The Puna volcanic eruption of 1955 created approximately 7.9 acres of land adjacent to the southerly boundaries of Land Patent Grant No. 4139 to C. L. Wight and Land Patent Grant No. 4140 to H. E. Wilder. Before the eruption, the southerly boundaries of the grants were along the sea. The eruption destroyed the preexisting seashore boundaries, and formed a new seashore boundary at the southerly end of the new land.

Five years after the eruption, Maurice Zimring and Molly Zimring, husband and wife, obtained a deed from the then owners of Grants 4139 and 4140, which described

the conveyances by metes and bounds precisely as in the original grants, except for two obviously typographical errors. Upon obtaining the deed, the Zimrings entered upon the newly formed land, occupied the same, and made improvements thereon, upon a claim that their title extended to such land.

The State of Hawaii, claiming title to the new. land, filed a complaint in the third circuit court to quiet title thereto as against the Zimrings and their predecessors in title. To the complaint, the Zimrings interposed a motion for summary judgment supported by an affidavit of one William K. Kamau, Sr.

In the affidavit, Kamau deposed that he was born in Puna in July 1892, and lived all of his life on the island of Hawaii; that his mother and hanai father,[1] both deceased, also were residents of the island during their lifetime; that he has been a surveyor of lands on the island for more than 40 years; and that he was familiar with land usage on the island and its relation to volcanic eruptions, both of his own knowledge and knowledge transmitted to him by his mother and hanai father. He further deposed, in the light of such knowledge:

"(1) that because of recurrent volcanic eruptions, the intent of a deed or grant to the sea-shore, and along such sea-shore, has always meant a perpetual grant along the sea-shore, wherever it may be, in order to give the abutting owner access to the products of the sea;

"(2) that if new land is created which destroys the shore-line and creates a new shore-line, the abutting owner's right to his sea-shore boundary gives him the ownership of the new land;

"(3) that if a volcanic eruption submerges land to

---

[1] "Hanai" means foster in Hawaiian; so, hanai father is foster father under Hawaiian family custom.

create a new shore-line farther inland than be-
fore, the abutting owner loses such submerged
land and owns to the new shore-line."

The State moved to strike the affidavit. The court at
first granted the motion, but later reconsidered and denied
it, and entered summary judgment in favor of the Zim-
rings. Aside from the affidavit, the court had nothing
before it upon which the summary judgment could have
been based, no deposition, no admission, no answers to
interrogatories, no evidence obtained at any hearing, and
no relevant fact as would be subject to judicial notice.

The court erred in denying the motion to strike. The
affidavit does not comply with H.R.C.P. Rule 56 (e), which
provides that an affidavit in support of a motion for sum-
mary judgment shall be made on personal knowledge, set
forth such facts as would be admissible in evidence, and
show affirmatively that the affiant is competent to testify
to the matters stated therein. Beyond stating that the
court erred, we will not elaborate on this point, for there
are two more basic grounds for reversing the judgment
appealed from.

One of such grounds relates to the meaning of the
phrase "established by Hawaiian usage," as used in HRS
§ 1-1, which reads:

"§ 1-1. Common law of the State; exceptions. The
common law of England, as ascertained by English
and American decisions, is declared to be the common
law of the State of Hawaii in all cases, except as other-
wise expressly provided by the Constitution or laws of
the United States, or by the laws of the State, or fixed
by Hawaiian judicial precedent, or established by Ha-
waiian usage; provided, that no person shall be subject
to criminal proceedings except as provided by the
written laws of the United States or of the State."

HRS § 1-1 is derived from L. 1892, c. 57, § 5, approved

on November 25, 1892.[2] Thus, the Hawaiian usage mentioned in HRS § 1-1 is usage which predated November 25, 1892. *De Freitas* v. *Trustees of Campbell Estate,* 46 Haw. 425, 380 P.2d 762 (1963).

The issue of material fact in this case is the existence or absence before November 25, 1892, of Hawaiian usage which gave, to the owner of land along a seashore, title to land created by volcanic eruption when the eruption destroyed the pre-existing seashore boundary and formed a new boundary along the sea.

Kamau's affidavit did not clearly establish that material fact. The usage Kamau deposed to might have had reference to facts he observed, and his mother and hanai father observed, in connection with volcanic eruptions occurring after November 25, 1892. If so, such facts did not establish the kind of usage meant in HRS § 1-1.

In this connection, we agree with the following statement in *Phoenix Savings and Loan, Inc.* v. *Aetna Casualty and Surety Co.,* 381 F.2d 245 (4th Cir. 1967):

> "It is well settled that summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances. * * * Burden is upon party moving for summary judgment to demonstrate clearly that there is no genuine issue of fact, and any doubt as to the existence of such an issue is resolved against him."

The other ground relates to the nature of this case.

---

[2] L. 1892, c. 57, § 5, read as follows: "Section 5. The common law of England, as ascertained by English and American decisions, is hereby declared to be the common law of the Hawaiian Islands in all cases, except as otherwise expressly provided by the Hawaiian Constitution or laws, or fixed by Hawaiian judicial precedent, or established by Hawaiian *national* usage, provided however, that no person shall be subject to criminal proceedings except as provided by the Hawaiian laws." (Emphasis supplied).

476

This is a case of first impression on a question of vast public importance. The impact of this decision will not be limited to the case at hand but will count for the future. We do not think that the decision in such a case should depend solely on the kind of affidavit submitted by the Zimrings.

It is stated in *Kennedy* v. *Silas Mason Co.*, 334 U.S. 249 (1948), involving an extremely important question affecting all cost-plus-fixed-fee war contracts, that no conclusion in such case should be rested on an indefinite factual foundation; that summary procedures present a treacherous record for deciding issues of far-flung import; and that it is part of good judicial administration to withhold decision of the ultimate questions in the case until the record presents a more solid basis of findings based on litigation or on a comprehensive statement of agreed facts.

Also pertinent is the following statement in *Eccles* v. *Peoples Bank*, 333 U.S. 426 (1948), which cautions against deciding important public questions on affidavits:

"* * * Judgment on issues of public moment based on such evidence, not subject to probing by judge and opposing counsel, is apt to be treacherous. Caution is appropriate against the subtle tendency to decide public issues free from the safeguards of critical scrutiny of the facts, through use of a declaratory summary judgment. * * *"

Reversed.

*Andrew S. O. Lee,* Deputy Attorney General (*Bertram T. Kanbara,* Attorney General, with him on the brief) for plaintiff-appellant.

*Helen B. Ryan* (*Ryan & Ryan* of counsel, *Molly D. Zimring* and *Franklin E. Zimring* with her on the brief) for defendants-appellees.