**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-17-0000053**
**18-MAY-2021**
**08:03 AM**
**Dkt. 45 SO**

NO.  CAAP-17-0000053

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

SURVIVORS OF AMOS K. AGLIAM,
Claimant-Appellant-Appellee,
v.
C & F TRUCKING, Employer-Appellee-Appellant,
and
HAWAIʻI EMPLOYERS' MUTUAL INSURANCE COMPANY, INC.,
Insurance Carrier-Appellee-Appellant

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO.  AB 2014-224 (WH) (9-13-01002H))

### SUMMARY DISPOSITION ORDER

(By:  Hiraoka, Presiding Judge, Wadsworth and Nakasone, JJ.)

Employer-Appellee-Appellant C&F Trucking and Insurance Carrier-Appellee-Appellant Hawaiʻi Employers' Mutual Insurance Company, Inc. (collectively, **C&F Trucking**), appeal from the Decision and Order of the Labor and Industrial Relations Appeals Board (**LIRAB**) filed on January 3, 2017 (**Decision**) entered against them and in favor of Claimant-Appellant-Appellee Survivors of Amos K. Agliam (**Survivors of Agliam**).  The Survivors of Agliam consist of Kelly Waiau (**Waiau**), who was in a relationship with Amos K. Agliam (**Decedent**), and Waiau's two minor children (**Children**) who were not Decedent's biological children.  The LIRAB determined that the Children, as hānai[1] children of

---

[1]    Hānai is a Hawaiian word meaning "Foster child, adopted child; foster, adopted."  Mary Kawena Pukui & Samuel H. Elbert, Hawaiian Dictionary 56 (rev. ed. 1986).

Decedent, were dependents entitled to receive death benefits pursuant to the Hawaiʻi Workers' Compensation Law, Chapter 386, Hawaii Revised Statutes (**HRS**), reversing the contrary decision by the Disability Compensation Division of the Department of Labor and Industrial Relations (**DLIR**).[2]

On appeal, C&F Trucking raises a single point of error, contending that the LIRAB's Conclusions of Law on pages 8-14 of its Decision misinterpreted HRS § 386-42 (Supp. 1997) and erroneously determined that the Children were the hānai children of Decedent at the time of the work accident on November 15, 2013 resulting in Decedent's death, and were entitled to death benefits.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we affirm.

C&F Trucking contends that the LIRAB Decision "misinterpreted HRS § 386-42," where the evidence showed that the Children "were not hanai children of Decedent and were not entitled to death benefits because their biological father [] remained financially and legally responsible for their support and never relinquished legal custody." C&F Trucking further argues that the LIRAB Decision "erroneously held Decedent's purely voluntary financial support of the two children established hanai status with the attendant legal rights and obligations of HRS § 386-42," and contends that this constituted "an improper expansion" of an employer's liability. These contentions are without merit.

In its Decision and Order, filed January 3, 2017, the LIRAB made the following unnumbered Conclusions of Law, pertinent to the error advanced on appeal:

---

[2]     The LIRAB Decision determined that Waiau was not a dependent entitled to such benefits. This determination is not at issue in this appeal.

> Employer also argues that allowance of death benefits to Child #1 and Child #2, while their biological father remained legally responsible for their financial support via child support would result in an undeserved windfall to them.
>
> The Board disagrees with Employer. The case law and legislative history support the Board's determination that Child #1 and Child #2 were *hanai* children of Decedent.
>
> As noted in the foregoing discussion, the custom of *hanai* is less formal than adoption or *ho'okama*. The addition of a *hanai* child to the definition of "child" only makes sense if it is interpreted as the less formal method of child adoption. The Hawaii Supreme Court has also distinguished the less formal *hanai* from the more formal adoption by custom.
>
> Documentation of the customary practice of *hanai* is not expected or required. The record on this appeal supports that Decedent lived with the children, considered and treated them as his own, and co-parented them with their biological parents.
>
> Although the biological father of Child #1 and Child #2 remained financially liable for child support payments, Decedent also contributed financially, albeit voluntarily, toward their welfare, including food, housing, and school-related expenses for the children. An award of dependent's benefits as a result of Decedent's work-related death would not result in a windfall to the children, but a continuation of a part of the financial support they were receiving from Decedent at the time of his death. Such a determination is also in keeping with the humanitarian nature of the workers' compensation law.

(Italics in original) (emphases added).

An agency's conclusions of law are reviewed *de novo*, pursuant to HRS § 91-14(g) (Supp. 2019). Kilakila ʻO Haleakalā v. Bd. of Land & Nat. Res., 138 Hawaiʻi 383, 396, 382 P.3d 195, 208 (2016) (internal quotation marks and citation omitted). HRS § 91-14(g) provides for judicial review of an agency's conclusions or decisions for violation of constitutional or statutory provisions, exceeding statutory authority, or being affected by other errors of law. HRS §§ 91-14(g)(1), (2), (4). "A conclusion of law that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case." Kilakila, 138 Hawaiʻi at 396, 382 P.3d at 208

(internal quotation marks and citations omitted). Interpretation of statutes are governed by the following:

> First, the fundamental starting point for statutory-interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

First Ins. Co. of Hawaii v. A&B Properties, 126 Hawaiʻi 406, 414, 271 P.3d 1165, 1173 (2012) (quoting State v. Wheeler, 121 Hawaiʻi 383, 390, 219 P.3d 1170, 1177 (2009) (internal citation omitted)).

The Workers' Compensation statute, HRS § 386-42, titled "Dependents," provides in relevant part:

> (a) The following persons, and no others, shall be deemed dependents and entitled to income, and indemnity benefits under this chapter:
>
> > (1) A child who is:
> > > (A) Unmarried and under eighteen years;
> > . . . .
>
> (b) A person shall be deemed to be actually dependent upon the deceased, if the deceased contributed all or a substantial portion of the living expenses of that person at the time of the injury.

(Emphases added). HRS § 386-2 (Supp. 1997), the definitions section, defines "Child" to include a "posthumous child, adopted child, stepchild, child born to parents not married to each other, and hanai child acknowledged prior to the personal injury." (Emphasis added). Hawaii Administrative Rules (**HAR**) Title 12, chapter 10, Workers' Compensation, section 1, further defines "Hanai child" as "a child who, prior to the industrial injury, is taken permanently to reside, be educated, and reared by someone other than the natural parents, traditionally a grandparent or other relative." HAR Rule 12-10-1.

4

The pertinent statutes and rule set forth above clearly and unambiguously include hānai children in the list of dependents entitled to income and indemnity benefits under Hawai'i's Workers' Compensation statutes.  There is nothing in the applicable statutes and rule that states or suggests that continued financial responsibility from a biological parent prevents children from becoming the hānai children of another individual, as C&F Trucking contends.

The LIRAB Decision examined legislative history and case law to confirm that the legislative intent was to expand survivors' benefits to include children who were not formally adopted.[3]  The LIRAB Decision cited, *inter alia*, case law including Leong v. Takasaki, 55 Haw. 398, 410-11, 520 P.2d 758, 766 (1974), which explained the informal nature of hānai:

> The Hawaiian concept of adoption also differs from that in
> other common law jurisdictions.  The ancient Hawaiians

---

[3]     The LIRAB Decision noted the following committee reports from 1982 when the legislature amended HRS § 386-2, to specifically include hanai children in the definition of "dependent."  These reports provide:

> The purpose of this bill is to amend Section 386-2, Hawaii Revised
> Statutes, to grant a hanai child . . . toward whom the employee
> had assumed the duties and responsibilities of a parent, the same
> rights as other children as defined in this section.

> As the present statute now exists, these dependents who, because
> of the employee's failure to initiate formal adoption proceedings,
> are not treated as children of the employee.  Your Committee is
> aware that the concept of "hanai" is an integral part of Hawaii's
> tradition, which is currently used interchangeably in describing
> children "adopted" by custom.

S. Stand. Comm. Rep. No. 277-82, in 1982 Hawai'i Senate Journal, at 1066. Another report similarly states:

> The purpose of this bill is to entitle a "hanai child" the same
> rights as other children enumerated in Section 386-2 HRS.

> This bill was recommended by the Workers' Compensation Program
> Commission.  The Commission felt that the unique tradition of
> hanai warranted legislation that would protect the rights of these
> children.

H. Stand. Comm. Rep. No. 756-82, in 1982 Hawai'i House Journal, at 1244.  We note that the LIRAB Decision incorrectly cited the second report as a Senate report, but it was a House Report.

> cherished the principle of adoption, which took two forms: A child or adult one loves, but for whom one might not have exclusive care, might be adopted as a *keiki ho'okama* (child), or *kaikua'ana ho'okama*, *kaikaina ho'okama*, *kaikuahine ho'okama*, *kaikunane ho'okama* (adult). A child so adopted would be adopted as a child of the family, and entitled to inherit through his parents, while an adult would be adopted as a form of showing affection or respect. On the other hand, a *keiki hanai* is a child given to another to raise, as a foster child. O'Brien v. Walker, 35 Haw. 104, 128-30 (1939); Andrews and Parker, Hawaiian Dictionary 104, 158 (1922); Pukui and Elbert, Hawaiian Dictionary 52, 115 (1971). As adoption under the statute replaced ancient Hawaiian custom and usage, the term *ho'okama* has fallen into disuse and the term *hanai* has since been used to refer to all types of adoption. Nevertheless the custom of giving children to grandparents, near relatives, and friends to raise whether legally or informally remains a strong one.

(Italics in original) (footnote omitted).

Based on the legislative history and case law, the LIRAB correctly concluded that a hānai relationship is "less formal than adoption," and that "[d]ocumentation of the customary practice of hanai is not expected or required." When construing a statute, courts must "give effect to all parts of a statute, and no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute." Adams v. CDM Media USA, Inc., 135 Hawaiʻi 1, 18, 346 P.3d 70, 87 (2015) (citation and internal quotations omitted). Requiring a hānai relationship to follow the same formalities as an adoption would render the inclusion of the term "hanai" in HRS § 386-2 superfluous, where an adopted child was included in the statute prior to the addition of the term "hanai" in 1982.

The record in this case established a hānai relationship between Decedent and the Children. Waiau was previously married to the Children's biological father, but separated from him in 2010, and was divorced in 2011. After the divorce, Waiau retained full legal and physical custody of the Children, who have lived with her since birth. The Children's

biological father was ordered to pay child support, but he did not start paying the child support until after Decedent's death.

Waiau and Decedent's relationship began in 2010. Decedent, Waiau, and the Children began living together from December of 2010, until Decedent's death on November 15, 2013. Waiau and Decedent shared housing expenses, had been approved for a loan to purchase a home together, and they had planned to be married.  The LIRAB Decision found that Decedent had developed a very close relationship with the Children and treated them as his own.  Decedent helped pay for the Children's private school tuition, rent and utilities, groceries, and school supplies. Decedent often took the Children on outings to the beach, mall, movies, on fishing excursions, motorcycle rides, jiu-jitsu, and taught the Children how to surf.  Decedent referred to the Children as his children both in his everyday life, as well as on social media.  Decedent also volunteered at the Children's school as a parent/guardian, and assisted in their school's annual fundraising event.  Decedent provided guidance and discipline to the Children, and had conversations with them about their future career paths and college opportunities.

Based on our review of the record and the law, the LIRAB Decision's COLs were not wrong.  The LIRAB's conclusion that the Children's biological father's continued financial responsibility and lack of formal relinquishment of any parental rights did not preclude the Children from being the hānai children of Decedent, was correct.  See HRS § 91-14(g); Kilakila, 138 Hawaiʻi at 396, 382 P.3d at 208.  Decedent's voluntary financial and non-financial support of the Children established their hānai status; and the LIRAB's conclusion in this regard was correct.  See id.  The LIRAB Decision's conclusions in this case were consistent with Hawaiʻi Workers' Compensation Law and were not an "improper extension" of Hawaiʻi law as C&F Trucking contends.

Therefore, IT IS HEREBY ORDERED that the Decision and Order of the Labor and Industrial Relations Appeals Board Filed on January 3, 2017, is affirmed.

DATED:  Honolulu, Hawaiʻi, May 18, 2021.

On the briefs:

Brian G.S. Choy                     /s/ Keith K. Hiraoka
Keith M. Yonamine                   Presiding Judge
(Choy & Tashima)
for Employer/Insurance              /s/ Clyde J. Wadsworth
Carrier-Appellees-Appellants        Associate Judge

Rechelle A.M. Barbour               /s/ Karen T. Nakasone
(Remillard & Huynh)                 Associate Judge
for Claimaint-Appellant-
Appellee