STANLEY PACHECO and RAMONA PACHECO, Plaintiffs, *v.* HILO ELECTRIC LIGHT COMPANY, LTD., Defendant and Third-Party Plaintiff-Appellee, *v.* STATE OF HAWAII, Third-Party Defendant-Appellant.

NO. 5385

MARCH 19, 1974

RICHARDSON, C.J., LEVINSON, KOBAYASHI and OGATA, JJ., and CIRCUIT JUDGE CHANG ASSIGNED TEMPORARILY BY REASON OF VACANCY

OPINION OF THE COURT BY LEVINSON, J.

On August 27, 1967, Stanley Pacheco was seriously injured while operating a tractor-type lawnmower as an employee of the State of Hawaii. On that day, Pacheco was mowing grass near the 18-mile post on the roadside between Hilo and Honokaa on the island of Hawaii when a large sign, owned and maintained by the Hilo Electric Light Company, hereinafter referred to as HELCO, collapsed and fell on his head. As a result of the injuries Pacheco suffered in this accident, the State, as his employer, paid him $40,000 in workmen's compensation benefits during the following four and one-half years.

As was his right under HRS § 386-8 (Supp. 1973),[1] however, Pacheco on August 27, 1969 filed suit against HELCO alleging that his injuries were the proximate result of HELCO's negligence in constructing, placing, and maintaining the sign which fell on him, and claiming $150,000 in damages.[2] HELCO, in turn, joined the State as a third party defendant, claiming in two separate counts of its complaint that (1) the State was liable as a joint tortfeasor for contribution to HELCO in the event the latter should be found liable to Pacheco, and (2) the State's alleged negligence, through its agents, precluded it from asserting a right to recover from HELCO any of the $40,000 the State had paid Pacheco in benefits. In response, the State moved to dismiss the third party complaint entirely on the ground that its liability to Pacheco under Hawaii's Workmen's Compensation Law precluded HELCO, under HRS § 386-5,[3] from joining it as a party. The trial court treated this motion as one for summary judgment and dismissed the first count of HELCO's complaint; it denied the State's motion to dismiss the second count, however.

Subsequently HELCO entered into a compromise with both plaintiffs, by the terms of which HELCO agreed to pay them $25,000 in full settlement of their claims against HELCO arising out of the accident in which Pacheco was

---

[1] HRS § 386-8 (Supp. 1973) provides in pertinent part:

When a work injury for which compensation is payable under this chapter has been sustained under circumstances creating in some person other than the employer or another employee of the employer acting in the course of his employment a legal liability to pay damages on account thereof, the injured employee or his dependents (hereinafter referred to collectively as the employee) may claim compensation under this chapter and recover damages from such third person.

[2] Ramona Pacheco, Stanley Pacheco's spouse, was also named as a plaintiff in the action and claimed $5000 in damages allegedly for loss of her husband's companionship resulting from his injuries.

[3] HRS § 386-5 reads as follows:

*The rights and remedies herein granted* to an employee or his dependents on account of a work injury suffered by him shall *exclude all other liability of the employer to* the employee, his legal representative, spouse, dependents, next of kin, or *any one else entitled to recover damages from the employer*, at common law or otherwise, on account of the injury.

(Emphasis added).

injured. The State approved this settlement. In addition, HELCO and the State mutually stipulated to proceed with count two of the third party complaint to trial on the merits. The dismissal of count one of the complaint and the terms of the stipulation narrowed the issues in the lawsuit considerably. HELCO no longer sought contribution from the State for any part or all of the $25,000 HELCO had agreed to pay Pacheco. The sole point of controversy became whether the *State* could recover from HELCO the $40,000 it had already expended in workmen's compensation benefits for Pacheco's injuries. In assenting thus to limit the parameters of the suit, the State expressly waived its right to assert a lien against the $25,000 settlement between HELCO and Pacheco.[4] Instead, the parties agreed that the factual determination whether the State was negligent, either through Pacheco's own contributory fault or the negligence of other State employees, would determine the State's right to collect $40,000 from HELCO. Basically, the parties by this stipulation acknowledged HELCO's actionable negligence, but agreed that the burden of loss with respect to the $40,000 paid to Pacheco in workmen's compensation benefits would remain with the State if it were also found negligent.

With this understanding, the case proceeded to trial before Circuit Court Judge Benjamin Menor, sitting without a jury. After hearing the evidence, Judge Menor determined that "[b]oth the negligence of Stanley Pacheco and the other employees of the State were proximate causes of the injuries sustained by Stanley Pacheco." Accordingly, on August 3,

---

[4] HRS § 386-8 (Supp. 1973) (emphasis added) provides in pertinent part:

If the action is prosecuted by the employee alone, the employee shall be entitled to apply out of the amount of the judgment for damages, or settlement in case the action is compromised before judgment, the reasonable litigation expenses incurred in preparation and prosecution of such action, together with a reasonable attorney's fee which shall be based solely upon the services rendered by the employee's attorney in effecting recovery both for the benefit of the employee and the employer. *After the payment of such expenses and attorney's fee there shall be applied out of the amount of the judgment or settlement proceeds, the amount of the employer's expenditure for compensation, less his share of such expenses and attorney's fee. On application of the employer, the court shall allow as a first lien against the amount of the judgment for damages or settlement proceeds, the amount of the employer's expenditure for compensation, less his share of such expenses and attorney's fee.*

1972, he entered judgment in favor of HELCO and against the State, thereby foreclosing whatever right the State may have had to reimbursement for the benefits it had paid Pacheco. From this judgment the State appeals.

As a threshold matter, the State argues that the trial court erroneously denied the motion to dismiss count two of HELCO's third party complaint. While it lacked case authority from this jurisdiction at the time it made this motion, the State nonetheless argued that the language of HRS § 386-5, quoted at note 3 *supra*, precludes all suits for contribution, "limited" or otherwise,[5] brought by a third-party tortfeasor against an employer obligated to pay workmen's compensation benefits to an employee injured by the tortfeasor's negligence. *See generally* 2 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION §§ 76.21 to .22 (1970). In *Kamali v. Hawaiian Electric Co.*, 54 Haw. 153, 159, 504 P.2d 861, 865 (1972), decided several months after the judgment in this case, we subscribed to the foregoing position, holding that section 386-5 "clearly and unequivocally precludes all contribution by a third party against an employer on the theory that the employer was a joint tortfeasor." It follows that the trial court correctly dismissed count one of HELCO's complaint, which claimed contribution from the State. Count two, however, was not based on a theory of contribution, but rather on the theory that the State's negligence barred it from asserting any right to recover from HELCO the benefits the State had paid Pacheco.[6] In substance it sought a declaration

---

[5] Since the liability of an employer under a workmen's compensation system is absolute, without regard for any negligence attributable to him, most jurisdictions hold that under no circumstances can he be sued as a joint tortfeasor by a third party whose negligence may have been a contributing cause of an employee's injuries. 2 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 76.21 (1970). A minority of courts have held, however, that an employer may be sued by the third party for "limited contribution," *i.e.*, for an amount which is restricted to "the sum which the employer would have been liable to pay the employee in compensation." *Id.* § 76.22, at 239.

[6] Clearly the first count of HELCO's complaint was premised on an alleged right to contribution since it sought to hold the State liable for damages which Pacheco might have recovered from HELCO. However, it is difficult to understand the State's assertion, made in its brief and on oral argument, that the second count was for "limited contribution" and hence was similarly flawed. "Limited contribution"

of HELCO's nonliability to the State. Consequently, the trial court erred in not dismissing this count only if we hold that section 386-5 immunizes employers from suits for any purpose by third-party tortfeasors. Even if we assume that the rationale of *Kamali* extends this far, and that the trial court should have dismissed both counts of HELCO's complaint, the agreement to try the case effected by the State and HELCO vitiated whatever error in this regard the trial court committed. The State chose to compromise its then uncertain right to dismissal under HRS § 386-5 in return for HELCO's admission of primary negligence in causing Pacheco's injuries; further, the State expressly agreed to try the question of its negligence, through Pacheco or its other agents, as determinative of its right to recover from HELCO the $40,000 it had paid in benefits. Essentially, the State elected to reverse the procedural aspects of the case and proceed to trial as a de facto plaintiff asserting its rights as subrogee under HRS § 386-8 (Supp. 1973)[7] rather than to adhere to its demand

---

in the sense that *Kamali* uses that term refers to those amounts which an employer is obligated to pay an employee as workmen's compensation, but which the employer *has not yet paid. See* note 4 *supra*. By contrast, HELCO's second count related to $40,000 which the State had *already paid* to Pacheco. It therefore claimed "contribution" only in the sense that HELCO sought the State to "contribute" its right to sue HELCO for reimbursement, by way of offset to HELCO's liability to the *State itself*, and not to Pacheco. Such a distorted and circular conception of the legal meaning of contribution is absurd. *See* W. PROSSER, THE LAW OF TORTS § 50, at 310 (4th ed. 1971) ("Normally the apportionment of liability effected by contribution is . . . that each tortfeasor is required ultimately to pay his pro rata share, arrived at by dividing the damages by the number of tortfeasors") (footnote omitted).

[7] HRS § 386-8 (Supp. 1973) provides, in pertinent part:

If within nine months after the date of the personal injury the employee has not commenced an action against such third person, the employer, having paid or being liable for compensation under this chapter, shall be subrogated to the rights of the injured employee. Except as limited by chapter 657, the employee may at any time commence an action or join in any action commenced by the employer against such third person.

. . . .

If the action is prosecuted by the employer alone, the employer shall be entitled to be paid from the proceeds received as a result of any judgment for damages, or settlement in case the action is compromised before judgment, the reasonable litigation expenses incurred in preparation and prosecution of such action, together with a reasonable attorney's fee which shall be based solely upon the services rendered by the employer's attorney in effecting recovery both for the benefit of the employer and the employee. After the payment of such

for technical compliance with its interpretation of HRS § 386-5 and hence, arguably, dismissal of HELCO's third-party complaint. In short, the State is bound by the settlement to which it knowingly and unequivocally assented in open court.[8] *Cf. Kam Chin Chun Ming v. Kam Hee Ho,* 45 Haw. 521, 543, 371 P.2d 379, 394 (1962) (compromise "is not necessarily defective because the parties did not know the full extent of their rights").

Proceeding to the merits of the case, the State asserts that the evidence adduced at trial does not support the trial court's determination that Pacheco was contributorily negligent in causing the accident. Under the terms of its stipulation with HELCO and as subrogee to Pacheco's rights, the State could not recover from HELCO if Pacheco himself had no legal right to do so. And under the law in existence in Hawaii on the date of Pacheco's accident, and hence applicable to his claim whenever asserted, *see Bissen v. Fujii,* 51 Haw. 636, 466 P.2d 429 (1970), a plaintiff's contributory fault, absent a negligent defendant's "last clear chance," consti-

---

expenses and attorney's fee, the employer shall apply out of the amount of the judgment or settlement proceeds an amount sufficient to reimburse the employer for the amount of his expenditure for compensation and shall pay any excess to the injured employee or other person entitled thereto.

[8] In its findings of fact and conclusions of law in this case, the trial court stated that by the terms of the settlement between HELCO and the State, "the trial of the third party action between third-party plaintiff and third-party defendant would proceed *with all properly raised legal objections preserved* to a determination by the court." (Emphasis added). The State would have us read the italicized portion of the above statement as an indication that it preserved the right to assert as error on appeal the trial court's denial of the State's motion to dismiss count two of HELCO's complaint. However, the State's rights in this respect were controlled by the oral stipulation made in open court, *see* RULES CIR. CTS. HAWAII 19(a), which made no mention of preserving the State's objection to HELCO's right to maintain count two of its complaint. In any event, we regard this part of the trial court's recapitulation of the settlement merely as indicating that whatever objections the State properly raised at *trial* of the case would be preserved for appeal. Indeed, if we were to adopt the construction urged by the State, the stipulation would be rendered both meaningless and extemely harsh to HELCO, since HELCO would have bound itself to an admission of primary negligence in return for no concession of comparable significance by the State. A construction having such effects is disfavored by the law. *See, e.g.* Deseret Sav. Bank v. Walker, 78 Utah 241, 251-52, 2 P.2d 609, 614 (1931).

tuted a complete bar to this recovery.[9] *See generally* RESTATEMENT (SECOND) OF TORTS § 467 (1965). It therefore becomes necessary to review the facts upon which the trial court based its conclusion that Pacheco was negligent.

In early April, 1967, HELCO began erecting transmission lines along the highway between Hilo and Honokaa on the island of Hawaii. As was its practice on such projects, HELCO placed signs upon the strips of land, owned by the State, abutting either side of the road. These signs warned oncoming motorists that utility construction was in progress. They were 4 feet square, mounted on two legs of a tripod in such a manner that the tops of the signs stood 12 feet from the ground. They were constructed of wood with metal nails or rivets, and weighed approximately 80 to 150 pounds. The signs were put in place at the beginning of each work day and taken down at its end; they were placed at the same spots every day and were removed from the area permanently only when work was completed along the entire segment of the road.

Between the beginning of April and just prior to the accident at the end of August, 1967, Stanley Pacheco had mowed the grass on the shoulders of the Hilo to Honokaa road four or five times. During this period, a HELCO warning sign stood on a slanting, grassy slope on the mauka side of that road near the 18-mile post. At each previous mowing, Pacheco had mowed around the sign without removing it; as a result the grass immediately under the sign had grown considerably longer than the grass in the area surrounding it. Indeed, according to Pacheco's own testimony, the grass under the sign was two or three feet high by the time of the accident.

---

[9] I have in the past dissented from this court's adherence to the common law doctrine of contributory negligence. *See* Silva v. Oishi, 52 Haw. 129, 136, 471 P.2d 524, 528 (1970); Bissen v. Fujii, 51 Haw. 636, 640, 466 P.2d 429, 432 (1970). While the legislature abrogated the doctrine in 1969, replacing it with the comparative negligence system contained in HRS § 663-31 (Supp. 1973), the operation of the new law is confined to those claims accruing after July 14, 1969. L. 1969 ch. 227, § 2. Moreover, a majority of the court in the *Silva* and *Bissen* cases has, for better or worse, finally and decidedly declared that contributory negligence is available as a defense against all claims, such as the one in this case, accruing before July 14, 1969. I add only a reminder that I still adhere in principle to my objections to the majority's holdings in those cases.

On one occasion prior to the accident, Pacheco had complained to his supervisor that the sign near the 18-mile post was unstable and dangerous, but was told merely to "leave it alone." Pacheco had also complained, to no avail, that the tractor-mower which he used in his job lacked a protective canopy, such as was standard equipment on other tractor-mowers used by the State on the island of Hawaii.

On the day of the accident, Pacheco again had occasion to mow the area around the sign near the 18-mile post. According to his testimony, he tried to keep his tractor-mower two or three feet away from the legs of the sign. He mowed "back and forth" along the grassy slope several times, each time attempting to skirt around the sign. During one such attempt, he backed his tractor slowly down the slope, his head turned in the direction he was moving and away from the sign. During this maneuver, the sign fell on his head, causing the injuries of which he complains.

Mr. Walter Estes, a qualified civil engineer, conducted a series of scientific tests at the site of the accident, using a tractor-mower similar to Pacheco's and a sign similar to the one which had collapsed. He testified at trial that only two causes of the accident were possible, consistent with Pacheco's version of events: (1) that Pacheco's tractor or mower assembly physically struck the sign, causing it to fall, or (2) that the long grass under the sign tangled in the blades of Pacheco's mower, became hooked around one of the legs of the sign, and tugged the sign down on Pacheco while he was backing up. The State offered no evidence to rebut either of these possibilities.

In its findings of fact, the trial court accepted as true Mr. Estes' conclusions about the alternative causes of the accident. The trial court additionally determined that under either theory of causation, Pacheco "was negligent in the operation of his tractor-mower in that he did not exercise that degree of care which an ordinarily prudent power mower operator would have exercised under the same or similar circumstances." We find the trial court's conclusion amply supported by the record.

Cast adrift from the mooring of particular factual circum-

stances, the idea of "negligence," either primary or contributory, quickly becomes an elusive conceptual derelict. For example, the standard of conduct prescribed for a plaintiff by the Second Restatement is that "standard to which he *should* conform for his own protection," RESTATEMENT (SECOND) OF TORTS § 463 (1965) (emphasis added), a vague rule of behavior which is meaningful, if at all, only with reference to a specific human problem within which the plaintiff's actual conduct did or did not rise to the level of what he "should" have done by way of self-protection. As this court stated in *Young v. Honolulu Construction & Draying Co.*, 34 Haw. 426, 433 (1938), "in the last analysis what is negligence depends upon the facts and circumstances of each individual case, tested by the hypothetical ordinarily prudent man."

Precisely because a plaintiff's adherence or nonadherence to the required standard of self-care is generally tied intimately to the facts of his case, appellate courts should exercise considerable restraint in reviewing the conclusion of the fact-finder on this subject. Whether Pacheco acted as an ordinarily prudent man in the particular circumstances attending the accident, this court must treat as a question of fact in the sense that "men of reasonable intelligence may differ as to the conclusion to be drawn" from the evidence of Pacheco's actual conduct. *See* W. PROSSER, THE LAW OF TORTS § 37, at 208 (4th ed. 1971). In cases, such as this, where the fact-finder was the trial judge sitting without a jury, Rule 52(a) of the Hawaii Rules of Civil Procedure requires that his "findings of fact shall not be set aside unless clearly erroneous." In particular, we have held that "[a] finding is not 'clearly erroneous' unless the reviewing court is driven irrefragably to the conclusion that all objective appraisals of the evidence would result in a different finding." *Low v. Honolulu Rapid Transit Co.*, 50 Haw. 582, 586, 445 P.2d 372, 376 (1968).

Pacheco appreciated, well before the accident, not only the danger that the sign could fall because of its poor construction and placement on sloping ground, but also his special vulnerability to injury from falling objects as a consequence of the absence of a protective canopy on his tractor.

Pacheco's complaints to his superiors suggest that he understood that there was a risk of injury from the sign falling which was of a magnitude sufficiently great to charge him with a special duty of care. *See Viveiros v. State,* 54 Haw. 611, 613-14, 513 P.2d 487, 489 (1973).

Pacheco nevertheless chose to mow around the sign, when, as Mr. Estes testified, one man could have taken it down and thereby have mowed the long grass under it without any difficulty. Instead of assiduously avoiding the sign, Pacheco either struck it or came close enough to it to cause the long grass under the sign to become entangled in his mower blades, thereby tugging out one of the legs supporting the sign. While the trial court was unable to specify which of these possibilities was the precise cause of the accident, its determination that Pacheco's negligence was a contributing cause is acceptable since the evidence shows that one of two equally possible acts committed by Pacheco *must* have caused the sign to fall and since the inference that he was negligent is implicit in both. *See, e.g., Brumm v. Goodall,* 16 Ill. App. 2d 212, 226, 147 N.E.2d 699, 706 (1958); *cf. Struzik v. City & County,* 50 Haw. 241, 244-45, 437 P.2d 880, 883 (1968). In view of Pacheco's unique awareness of the dangers of the situation, his failure to remove the sign or his failure to give it a sufficiently wide berth were incompatible with the standard of self-protection which reason imposed on him.

We conclude that the trial court was not "clearly erroneous" in finding that Pacheco was negligent and that his negligence was a contributing cause of the accident. Since this finding alone precludes the State from asserting against HELCO a right to reimbursement for benefits paid to Pacheco, it is unnecessary for us to review the trial court's finding that the State is also precluded by the negligence of its agents other than Pacheco.

The judgment of the trial court is affirmed.

*Robert P. Jaress,* Deputy Attorney General, State of Hawaii *(George Pai,* Attorney General, of counsel) for third-party defendant-appellant.

*Richard E. Stifel (Goodsill, Anderson & Quinn* of counsel) for defendant and third-party plaintiff-appellee.