HAROLD BOUDREAU and NONA BOUDREAU, Plaintiffs-Cross Appellants-Appellees, *v.* THE GENERAL ELECTRIC COMPANY, a New York corporation, GEORGE PAIVA dba PAIVA'S PLUMBING SERVICE, a sole proprietorship, RICHARD FURTADO, AMFAC, INC., a corporation dba W. A. RAMSAY and dba RAMSAY, sued and served herein as Defendant DOE CORPORATION 1 and JOHN DOES 1 through 15, DOE CORPORATIONS 2 through 5 and DOE PARTNERSHIPS 1 through 5, Defendants, and THE GENERAL ELECTRIC COMPANY, a New York corporation, Defendant-Appellant-Cross Appellee, and AMFAC, INC., a corporation dba W. A. RAMSAY and dba RAMSAY, sued and served herein as Defendant DOE CORPORATION 1, Defendant-Cross Appellant-Appellee, and GEORGE PAIVA dba PAIVA'S PLUMBING SERVICE, a sole proprietorship, and RICHARD FURTADO, Defendants-Appellees

NO. 6094

MARCH 10, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY PADGETT, J.

From a judgment entered July 22, 1975 in favor of Harold Boudreau and Nona Boudreau against the General Electric Company and in favor of all other parties and against the Boudreaus and from an order denying motion for judgment on cross-claim filed October 1, 1975 in favor of General Electric Company and against Amfac, Inc., three appeals are taken: (1) The General Electric Company appeals the judgment against it; (2) Plaintiffs appeal the judgment below insofar as it is in favor of General Electric Company, Amfac, Inc. and Richard Furtado (appeal was also noted against George Paiva but that was subsequently dismissed), and (3) Amfac, Inc. appeals the order denying it judgment on its cross-claim against the General Electric Company.

Beginning in 1969, the Boudreaus leased a residence in Hilo from Furtado. That residence contained a G.E. Kitchen Center including a washer/dryer installed some years previously when the home was built. On September 3, 1970, an explosion occurred inside the washer/dryer, which blew out the glass in the door, hurling

Plaintiff Nona Boudreau some distance and inflicting numerous cuts from the broken glass upon her. The washer/dryer had been manufactured by General Electric and sold to Furtado by Amfac, Inc. When installed, it contained an air gap which prevented drainage water from backing up into the washer/dryer. At some unknown time in the past, some unknown person had altered the drainage lines so as to eliminate the air gap. It was agreed at trial that what had happened is that waste water containing food had backed up into the washer/dryer and the food, in the course of decomposition, had given off methane gas. On the morning of the accident, Nona Boudreau discovered the waste water and the food in the machine, attempted to empty it out and when she had taken out as much as she manually could, closed the door and pressed the button to start the machine in an effort to rid it of the remaining water. Apparently, a spark ignited the methane gas causing the explosion. The glass in the window of the door of the unit was not tempered or safety glass.

After a trial on liability, the jury, pursuant to a special verdict, determined that the G.E. Kitchen Center was not defective but that General Electric was negligent in designing, manufacturing and selling the Kitchen Center and that that negligence was a proximate cause of the plaintiffs' injuries. It further determined that Amfac was not negligent.

With respect to the issues between the Boudreaus and Furtado, the jury determined that:

> Do you find that the DEFENDANT FURTADO leased the washer/dryer or his residence as a part of his business and as a commercial transaction and further, did you find that said lease was not an occasional sale, transaction or personal residential lease?

> . . . .

> NO __X__

The questions as to strict liability and implied warranty of habitability were, therefore, not answered.

After judgment was entered in favor of the Boudreaus and against General Electric, Amfac moved for indemnity on its cross-claim against General Electric which indemnity was denied by the court below *in toto*. Amfac had been identified as one of the Doe Corporations in the action on September 9, 1974 and tendered

defense of the action to General Electric by letter of April 3, 1975 to which no reply was received.

After the determination on liability, a trial was held on the issue of damages. In returning its verdict, the jury apparently deducted from the medical expenses paid by the Boudreaus the amount which the exhibits showed had been reimbursed by their insurance carrier. However, no instruction on the collateral source rule was requested by the Boudreaus or given by the court.

As framed by the briefs, the appeals seek to raise the following issues:

1. *General Electric's Appeal.*

a. Was there sufficient evidence to support the jury's verdict that General Electric was negligent and that its negligence was a proximate cause of the Boudreaus' injuries?

b. Did the court below err in permitting the Boudreaus' late named expert Williams to testify under the circumstances of the case?

2. *Boudreaus' Appeal.*

a. With respect to General Electric and Amfac, were the instructions on strict liability which included the test of reasonability proper?

b. With respect to General Electric, should there have been an additur to the verdict of the amount of the HMSA payments apparently deducted by the jury from the Boudreaus' special damages?

c. With respect to Furtado, was his instruction 26(a) properly given?

d. With respect to Furtado, should Boudreaus' instruction No. 47 on the theory of implied warranty of habitability have been given?

3. *Amfac's Appeal.*

a. Should Amfac have been allowed indemnity for all or a portion of its costs and attorney's fees against General Electric?

Unfortunately, with respect to the claims of the Boudreaus based upon the theories of strict liability and negligence, a review of the record does not make the issues as simple and straightforward as the briefs would seem to indicate. The first three questions and answers

in the special verdict form, with respect to these issues, read as follows:

    1. Was the GE Kitchen Center defective?

    YES ＿＿

    NO ＿X＿

    2. Was GE negligent in designing, manufacturing and selling the Kitchen Center?

    YES ＿X＿

    NO ＿＿

    3. If GE was negligent, was their negligence a proximate cause of plaintiffs' injuries?

    YES ＿X＿

    NO ＿＿

In instructing the jury, the court below, having set forth the first four criteria for holding a manufacturer strictly liable, stated over objection:

> And fifth, that the defect, if it existed, made the product unreasonably dangerous and unsafe for its intended use. A product is not defective unless it is reasonably foreseeable that it may, as a result of normal use, cause an accident of the general kind or type involved in this case.

The test of foreseeability, thus imported into strict liability, was objected to by the Boudreaus.

    The jury, by the findings quoted, found that the product was not defective but that G.E. was negligent. Since reasonability and foreseeability were the touchstones of both negligence and strict liability under the instructions given by the court, there is an apparent anomaly between the finding that the product was not defective and the finding that G.E. was negligent. G.E.'s counsel suggests that the anomaly may be explained by postulating that the jury found that the product with the air gap was properly designed and manufactured but that the failure in the various instructions and guides by G.E. to warn of the consequences should the air gap be bypassed became the rationale upon which the jury made its determination. (Counsel further suggests that there was no evidence to support such a finding with respect.to the alleged failure to warn. With this latter, we do not agree. The literature put out by G.E. is singularly lacking in any explanation of the reason for the air gap and yet the expert testimony at trial made clear that the purpose of the air gap is

to prevent backflow. Backflow was the root cause of the accident in this case.)

However, the fact remains that the person or persons who fabricated the bypass are unknown and consequently, it could not be established by evidence that they had access to the G.E. literature and were thereby misled by its silence. There thus was no proof that the silence in the G.E. literature was a cause for the bypass. Hence, if the lack of warning was, as counsel suggests, the basis for the finding of negligence, the finding of causation is not explained.

Moreover, the form of verdict puts designing, manufacturing and selling in the conjunctive with respect to negligence. If there was negligence in designing and manufacturing the product, it is hard to see how the jury could find that the product was not defective. On the other hand, if there was negligence in the selling of the product, *i.e.* the failure of the literature to warn of the hazard of backflow, it is hard to explain not only the holding of causal connection but the jury's absolution of Amfac since it was the direct seller and stood in the stream of commerce between the Boudreaus and G.E.

We are thus driven to the conclusion that the answers given by the jury on the special verdict form, with respect to the Boudreaus versus G.E. and Amfac, are irreconcilable.

The instructions as given by the court, when read together, do not draw a clear distinction between the theories of negligence and strict liability. The special verdict form, as drawn, probably contributed to the jury's confusion.

The instructions which court and counsel intended to deal with the issue of strict liability are erroneous. The sentence

A product is not defective unless it is reasonably foreseeable that it may, as a result of normal use, cause an accident of the general kind or type involved in this case.

converts the doctrine of strict liability into one of negligence. Moreover, the use of the word "unreasonably" in the sentence

And fifth, that the defect, if it existed, made the product unreasonably dangerous and unsafe for its intended use.

has much the same effect. *Cronin v. J.B.E. Olson Corporation,* 8 Cal.3d 121, 104 Cal. Rptr. 433, 501 P.2d 1153 (1972). As the briefs on both sides acknowledge, the use of such words as "unreasonably" or "reasonably foreseeable" in strict liability instructions with respect to the dangerousness of the product, have been the subject of much

debate. The contention on the one hand, is that they improperly equate strict liability with negligence and on the other hand, that absent their insertion into the instructions, the manufacturer or seller would be held to the standard of an insurer. We think the confusion evident in the jury's verdict in this case strongly tips the scales in favor of the former argument. The jury's finding General Electric to be negligent but the product not defective, in the circumstances, points clearly to the danger of importing the reasonability or foreseeability test with respect to danger into strict liability instructions.

Accordingly, the judgment below on both negligence and strict liability with respect to the Boudreaus, General Electric and Amfac is reversed for a new trial.

The reversal on the issues of strict liability and negligence renders moot the question of unfair surprise by the late production of the expert witness Williams by the Boudreaus. It was not until trial had begun that Boudreaus' counsel revealed that Williams would be called to testify that safety glass was being used by other manufacturers in dryer doors at the time the unit in question was manufactured. At that juncture, G.E.'s counsel was unable to procure the attendance of expert witnesses to refute that contention. It is obvious from the record that counsel for the Boudreaus should have found Williams long before they did and that there was prejudice to G.E. by the late introduction of his name and subsequently, his testimony. The court below, in the circumstances, did make an effort to alleviate the prejudice which it recognized. Had we otherwise sustained the verdict against G.E. below however, we would have been very much concerned with whether there was an abuse of discretion in permitting the late introduction of Williams' name and testimony and in refusing a sufficient continuance for G.E. to produce the witnesses it needed in opposition. As we have said before, Rule 18(a)(1) of the Rules of the Circuit Court must be scrupulously followed if we are to have fair trials. *Cafarella v. Char*, 1 Haw. App. 142, 615 P.2d 763 (1980).

As to the Boudreaus' contention that they should have had an additur, the reversal of the judgment for a new trial obviates the need for an answer to that question also. However, if damages are reached on the new trial, it appears clear that the offering of a standard collateral source instruction to the jury may very well

eliminate any recurrence of the problem.

With respect to the Boudreaus' appeal against the special verdict in favor of Furtado, Furtado's instruction 26(a) and the special verdict required the Boudreaus on either the strict liability or the implied warranty theories to prove that the leasing of the washer/dryer or the residence was a part of the business of Defendant Furtado *and* was a commercial transaction *and* that the lease of the real property and improvements was not an occasional sale transaction or a personal residential lease. Thus, even if Plaintiffs proved that leasing the residence was a part of Furtado's business and a commercial transaction, nevertheless, if they did not prove that it was not a personal residential lease, their case would fail. The law of strict liability requires that the lessor be engaged in the business of supplying the goods claimed to be defective. *Stewart v. Budget Rent-A-Car Corp.*, 52 Haw. 71, 470 P.2d 240 (1970). The instruction given by the court over objection, went far, far beyond that. Although the house in question was leased along with a bar, store and another rental house, Furtado had originally built the home and installed the appliances for his personal use. Given that fact, which was undisputed, the instruction could have been taken by the jury to mean that since the house in question originally was his personal home, the Boudreaus had not proved their case.

As far as the theory of liability based upon an implied warranty of habitability goes, we see no occasion for creating an exception for an "occasional lease". Compare the facts in *Lemle v. Breeden*, 51 Haw. 426, 462 P.2d 470 (1969). Any instruction on the non-business or occasional sale or lease doctrine should have been expressly limited to the strict liability theory. Moreover, Furtado's argument that the implied warranty of habitability does not extend to personal injuries seems to us to be logically meritless.

The special verdict form, as submitted to the jury, cut off all consideration of the doctrines of strict liability and implied warranty with respect to Furtado unless the Boudreaus had met the multiple burdens of proof imposed upon them by instruction 26(a). The jury found they had not and thus, gave no consideration to those issues. We therefore reverse for a new trial with respect to the judgment in favor of Furtado. In passing, we do not accept the Boudreaus' contention that their instruction 47 should have been given. As we read it, it requested a directed verdict on the issue of the implied

warranty of habitability as applied to the facts in this case. We think this was an issue which should have been left to the jury.

Finally, we come to Amfac's appeal on its cross-claim. Since the case is being remanded for retrial, it is not necessary for us to pass upon that issue. We note however, that Amfac made a timely tender of the defense to G.E. Therefore, insofar as Amfac's legal fees and expenses arose out of efforts to defend against the claims of strict liability and negligence which were leveled against Amfac simply because it stood in the stream of commerce between G.E. and the Boudreaus, the general law would grant it indemnification. *Vergott v. Deseret Pharmaceutical Co., Inc.*, 463 F.2d 12 (5th Cir. 1972); *Williams v. Steuart Motor Company*, 494 F.2d 1074 (D.C. Cir. 1974).

Reversed and remanded for further proceedings consistent herewith.

*Richard E. Stifel (George W. Ashford, Jr.* on the opening and answering briefs; *William S. Miller* on the answering brief; *George W. Ashford, Jr.* on the answering brief; *Goodsill, Anderson & Quinn* of counsel) for The General Electric Company.

*Roger W. Fonseca (Cedric Choi* on the opening and reply briefs; *Torkildson, Katz, Jossem & Loden* of counsel) for Harold Boudreau and Nona Boudreau.

*Edward deLappe Boyle (Cades, Schutte, Fleming & Wright* of counsel) for Amfac, Inc.

*Berton T. Kato (Clyde Wm. Matsui* on the answering brief, *Kobayashi, Watanabe, Sugita & Kawashima* of counsel) for Richard Furtado.