ALTA E. BIDAR, Plaintiff-Appellant, *v.* AMFAC, INC., a Hawaii corporation, JOHN DOES 1-5, ROE CORPORATIONS 1-3, Defendants-Appellees

NO. 8587

(CIVIL NO. 4189)

SEPTEMBER 16, 1983

LUM, C.J., NAKAMURA, PADGETT, AND HAYASHI, JJ., AND CIRCUIT JUDGE SPENCER ASSIGNED BY REASON OF VACANCY

548

OPINION OF THE COURT BY NAKAMURA, J.

The question for decision is whether the Circuit Court of the Second Circuit erred in awarding Amfac, Inc. (Amfac), a hotel owner and operator, summary judgment in an action brought by Alta Bidar (Mrs. Bidar or the plaintiff) to recover damages for injuries sustained in a fall that occurred while she was a guest at an Amfac hotel in Lahaina, Maui. Although we see no error in the grant of judgment in Amfac's favor on Mrs.

Bidar's product liability claim, we conclude the presence of disputed factual issues precluded the summary disposition of her negligence claim. We therefore reverse the circuit court in part and remand the case for further proceedings.

I.

The plaintiff, a sixty-seven year old visitor from Madison, Wisconsin, checked into the Kaanapali Beach Hotel on June 4, 1977 with a tour group composed of senior citizens. On June 7, 1977, fifteen minutes before the group's scheduled departure from Lahaina, she decided to go to the bathroom of the hotel room she had been occupying for three days. In rising from her sitting position after using the toilet, she grabbed a towel bar affixed to an adjacent wall and attempted to pull herself up. But the bar tore loose from the wall before she was able to bring herself to a full upright position. This caused her to lose her balance, fall, and become wedged between the toilet and the bathtub. As a result, she sustained a fractured hip and a fractured wrist.

Mrs. Bidar's suit for damages which was filed on May 31, 1979 averred that Amfac and other unnamed defendants "negligently maintained . . . [the hotel] premises" and "failed to advise users . . . that the [premises] were in a dangerous and defective condition," though they "knew or should have known of the negligently maintained condition." The foregoing conduct, she claimed, "constituted an intentional, wilful and wanton disregard of plaintiff's rights, was grossly negligent, and thereby subject[ed] defendants . . . to the imposition of punitive damages." The complaint also charged defendants were "strictly liable to plaintiff for the damages sustained by her."

Amfac responded by denying any negligent or intentional conduct causing plaintiff harm and further alleging "that the damages sought to be recovered . . . were caused by the negligence or fault of the Plaintiff, which negligence was the sole cause of said damage[s], or greater than the negligence or fault, if any, of AMFAC." It then moved for summary judgment, arguing, *inter alia,* that it was entitled to judgment as a matter of law since it clearly had no "duty to design, construct and maintain a towel rack so that it would support the weight of a

220-pound individual" and Mrs. Bidar's reliance on the rack for support in rising from the toilet seat was neither an ordinary nor a reasonably foreseeable use of the fixture.

The plaintiff countered with arguments that the "theories of recovery" articulated in her complaint "all f[e]ll within the parameters of the doctrine of product liability" and that "defendant had a duty to provide a room and accoutrements therein which were not dangerous or defective even if a foreseeable misuse thereof might occur." The "defendant's use of the towel rack for an unintended purpose, not the hotel room itself," was the purported basis of liability under plaintiff's product liability theory. And she maintained there was a factual dispute on "whether plaintiff's use of the towel rack for the purpose of arising from the toilet, under the circumstances, given the proximity of the towel rack to the toilet, was a foreseeable misuse of the towel rack."

The circuit court awarded Amfac summary judgment on "all portions of Plaintiff's Complaint which purport[ed] to state claims for products liability, intentional injury, or strict liability." But summary judgment on those "portions of Plaintiff's Complaint which purport[ed] to state a claim based upon the alleged negligence of Defendant AMFAC, INC. with respect to the location and maintenance of the towel rack" was denied. The plaintiff was given leave to amend her pleading and Amfac was granted permission to submit a new response if plaintiff elected to plead anew or to file an amended answer if she chose not to amend the complaint. Plaintiff, however, did not amend her complaint; and Amfac filed an amended answer within the time allowed by the court, averring *inter alia* that the action was "barred by the applicable statute of limitations."

Undaunted by the court's partial rejection of the plea for summary disposition of the case, Amfac submitted a second motion for summary judgment. This time, it relied primarily on Hawaii Revised Statutes (HRS) § 657-8 which then provided immunity from negligence actions premised on allegedly faulty construction of buildings for landowners, contractors, and others after a lapse of six years following construction.[1]

---

[1] These provisions were subsequently invalidated by this court on constitutional grounds in Shibuya v. Architects Hawaii, Ltd., 65 Haw. 26, 43-44, 647 P.2d 276, 288

The plaintiff contended in opposition that the pertinent cause of action was "one sounding in negligent maintenance and repair of the premises" rather than faulty construction and that disputed issues of fact barred summary judgment. She also raised an entirely new argument, that Amfac had breached "the implied covenant of safe accom[m]odation, habitability, *et cetera.*"[2]

The circuit court, after listening to counsel and considering the memoranda in support of or in opposition to the second motion as well as those submitted earlier when the first motion was heard, concluded the defendant was "entitled to judgment in its favor as a matter of law." Amfac, therefore, was awarded summary judgment and the complaint was dismissed with prejudice. Following the denial of her motion for reconsideration, the plaintiff perfected a timely appeal to this court.

## II.

As we noted at the outset, the issue here is whether summary judgment was proper. Because of Mrs. Bidar's primary reliance on Amfac's purported negligence in maintaining its premises as a basis for recovery of damages, we initially consider the court's award of judgment to Amfac on her negligence claim.

## A.

We begin by examining the duty possibly owed by Amfac to Mrs. Bidar, for it is fundamental that a negligence action lies only where there is a duty owed by the defendant to the plaintiff. *Hulsman v. Hemmeter Development Corp.,* 65 Haw. 58, 65, 647 P.2d 713, 719 (1982); *Namauu v. City & County,* 62 Haw. 358, 361, 614 P.2d 943, 945 (1980); *Ono v. Applegate,* 62

---

(1982), and the parties' briefs acknowledge there is no pending issue related to HRS § 657-8.

[2] Plaintiff's unamended complaint, however, articulated no claim that there was a breach of an implied warranty.

Haw. 131, 137, 612 P.2d 533, 538 (1980). The existence of a duty, that is, "whether . . . such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other—or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant," is entirely a question of law. W. Prosser, *Handbook of the Law of Torts* § 37, at 206 (4th ed. 1971). *See also Kelley v. Kokua Sales & Supply, Ltd.,* 56 Haw. 204, 207, 532 P.2d 673, 675 (1975); *Leong v. Takasaki,* 55 Haw. 398, 407, 520 P.2d 758, 764 (1974); *Rodrigues v. State,* 52 Haw. 156, 170, 472 P.2d 509, 518 (1970).

The facts recounted earlier indicate the defendant is a hotel operator and the plaintiff was a guest at its hotel. "[A]n occupier of land," we have held, "has a duty to use reasonable care for the safety of all persons reasonably anticipated to be upon the premises." *Pickard v. City & County,* 51 Haw. 134, 135, 452 P.2d 445, 446 (1969). *See also Friedrich v. Department of Transportation,* 60 Haw. 32, 35, 586 P.2d 1037, 1040 (1978); *Farrior v. Payton,* 57 Haw. 620, 629, 562 P.2d 779, 786 (1977); *Gibo v. City & County,* 51 Haw. 299, 301, 459 P.2d 198, 200 (1969). Even though we have had no occasion to pass on the specific duty of an occupier of land who happens to operate a hotel, it goes almost without saying that we cannot view his duty to a guest in a different light. *See* Annot., 18 A.L.R.2d 973 (1951). Where a relationship of hotel operator and guest exists, there unquestionably is a duty owed by the hotel operator to maintain a bathroom adjoining a hotel room in a reasonably safe condition for the use of the guest. *Id.* at 976-79; *see* Annot., 93 A.L.R.3d 253 (1979); *see also Wells v. Howard,* 165 Colo. 471, 439 P.2d 997 (1968); *Trust v. Washington Sheraton Corp.,* 252 A.2d 21 (D.C. 1969); *Ruby v. William Morris, Inc.,* 66 So. 2d 218 (Fla. 1953); *Worth v. Reed,* 79 Nev. 351, 384 P.2d 1017 (1963).

B.

Whether the obligation to exercise reasonable care was breached is ordinarily a question for the trier of fact to determine. For "[u]nder the prevailing rule duty to use due care is bounded by the foreseeable range of danger," and "[r]eason-

able foreseeability of harm is the very prototype of the question a jury must pass upon in particularizing the standard of conduct in the case before it." 2 F. Harper & F. James, *The Law of Torts* § 18.8, at 1059 (1956); *see also Farrior v. Payton*, 57 Haw. at 631, 562 P.2d at 787 (quoting with approval *Machacado v. City of New York*, 365 N.Y.S.2d 974, 979-980 (1975)).[3] Whether the breach of duty was more likely than not a substantial factor in causing the harm complained of is normally a question for the trier of fact also. *McKenna v. Volkswagenwerk Aktiengesellschaft*, 57 Haw. 460, 464, 558 P.2d 1018, 1022 (1977). We recognize too that "[i]ssues of negligence are ordinarily not susceptible of summary adjudication" by the court. *Pickering v. State*, 57 Haw. 405, 407, 557 P.2d 125, 127 (1976) (citing 6 J. Moore, *Moore's Federal Practice* ¶ 56.17[42] (2d ed. 1948)).

Summary judgment, in our oft-repeated view, is proper only when "there is no genuine issue as to any material fact and movants clearly demonstrate they should prevail as a matter of law." *Hulsman v. Hemmeter Development Corp.*, 65 Haw. at 61, 647 P.2d at 716 (citing Rule 56(c), HRCP; *Molokai Homesteaders Cooperative Association v. Cobb*, 65 Haw. 453, 629 P.2d 1134 (1981); *City & County v. Toyama*, 61 Haw. 156, 598 P.2d 168 (1979); *Lau v. Bautista*, 61 Haw. 144, 598 P.2d 161 (1979); *Hunt v. Chang*, 60 Haw. 608, 594 P.2d 118 (1979)) (footnote omitted). In addition, our review of such judgments has been governed by the rule that the "evidence and the inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion." *Fasi v. Burns*, 56 Haw. 615, 616, 546 P.2d 1122, 1123 (1976) (citing *Del Rosario v. Kohanuinui*, 52 Haw. 583, 483 P.2d 181 (1971)).

---

[3] Foreseeability may, of course, also play an important role in the definition of duty and the delineation of its scope by the court. *See, e.g.*, Hulsman v. Hemmeter Dev. Corp., 65 Haw. at 68, 647 P.2d at 720-21 (duty owed only to those foreseeably endangered; foreseeability a question of law); Ajirogi v. State, 59 Haw. 515, 527, 583 P.2d 980, 988 (1978) (foreseeability of risk of harm to plaintiff is question of law when determining whether plaintiff is among those to whom defendant's duty of care extends); Kelley v. Kokua Sales & Supply, Inc., 56 Haw. at 209, 532 P.2d at 676 (as a matter of law, duty not owed to one to whom defendants could not reasonably foresee consequences).

## C.

When the record is measured against the stringent criteria outlined above, the judgment in question does not pass muster. Our scrutiny of the evidence in a most favorable light to the plaintiff leaves us with a definite impression that reasonable minds could draw different inferences from the facts and arrive at conflicting conclusions on relevant factual issues.

Whether it was foreseeable that a guest would grab a towel bar within easy reach for support in rising from a toilet seat is in our view a genuine issue of material fact that ought to be left for jury consideration. Whether the damages sought to be recovered were caused in whole or in part by the plaintiff's fault and whether it exceeded that of the defendant or not also are questions that should be put before a jury. *Fry v. Bennett,* 59 Haw. 279, 282, 580 P.2d 844, 847 (1978); *Farrior v. Payton,* 57 Haw. at 632-33, 562 P.2d at 787; *Pacheco v. Hilo Electric Light Co.,* 55 Haw. 375, 384, 520 P.2d 62, 68 (1974); HRS § 663-31 (1976). Other factual disputes that must be resolved before the cause of action sounding in negligence can be adjudged are readily discernible. We thus conclude the circuit court erred in summarily disposing of the claim.

## III.

Turning to the more specific claim that "[d]efendants . . . are strictly liable to plaintiff for the damages sustained by her," we initially observe the plaintiff has vacillated in alleging precisely what product and defect form the basis of the cause of action.

The complaint tells us little more in this regard than what is stated in the foregoing excerpt from the pleading. At one point before the circuit court, however, when Amfac argued a hotel room has yet to be deemed a "product" by a court applying the rule of strict liability in tort, the plaintiff denied ever suggesting the hotel room was the "product" in question and asserted the towel rack was the defective product.[4] But before this court,

---

[4] These statements are found in a memorandum submitted to the circuit court which reads in part:

counsel seems to beat a retreat from the earlier stance; his thesis now is that "[i]f a portion of the leased or rented premises should prove defective, product liability rules of law apply."

Though mindful "that the public interest in human life and safety requires the maximum possible protection that the law can muster against dangerous defects in products," *Stewart v. Budget Rent-A-Car Corp.*, 52 Haw. 71, 74, 470 P.2d 240, 243 (1970), we cannot agree that our rule of strict liability should be applied here. For it still is a rule of "product" liability, and we are not certain to what product or defect the plaintiff ascribes her injuries.

In *Stewart* we acknowledged "the modern trend and the better reasoned view" was that strict liability in tort provided "a sound legal basis for recovery in products liability cases," *id.,* and

> adopt[ed] the rule that one who sells or leases a defective product which is dangerous to the user or consumer or to his property is subject to liability for physical harm caused by the defective product to the ultimate user or consumer, or to his property, if (a) the seller or lessor is engaged in the business of selling or leasing such product, and (b) the product is expected to and does reach the user or consumer without substantial change in its condition after it is sold or leased.

---

Defendant argues at length that the hotel room was not a "product" for the purposes of imposing strict product liability. ... [P]laintiff has never argued that the hotel room was a "product." Rather, what plaintiff has argued is that the towel rack in the defendant's bathroom of the hotel room rented by the defendant, for profit, to the plaintiff, was permitted by defendant to be used by plaintiff in a fashion which foreseeably resulted in plaintiff's injury. It is defendant's use of the towel rack for an unintended purpose, not the hotel room itself, which subjects defendant to strict liability.

. . . .

Despite defendant's assertion that "[i]n the instant case, there is no such allegedly defective product," ... there is a defective product, to-wit [sic]: the towel rack. Defendant permitted the towel rack to be used in a fashion where it could be foreseeably misused by persons needing assistance in arising from the toilet.

Plaintiff's Concluding Memorandum in Opposition to Defendant's Motion for Summary Judgment, at 2 (June 30, 1981).

*Id.* at 75, 470 P.2d at 243. What we approved was "essentially the rule adopted in the Second Restatement of Torts, Section 402A," *id.,* a rule predicating liability on the sale of a defective product despite the possibility that the seller may have "exercised all possible care in the preparation and sale of his product."[5] *Restatement (Second) of Torts* § 402A(2)(a) (1966).

Recently, in *Kaneko v. Hilo Coast Processing,* 65 Haw. 447, 654 P.2d 343 (1982), we were called upon to decide whether a construction worker injured in a fall occurring during the erection of a building could invoke the rule of strict liability in a suit against the manufacturer of the structure's prefabricated components. A defective weld in a steel girt fabricated by the defendant was an apparent factor in causing plaintiff to fall. We noted "[o]ther courts have extended the doctrine of products liability to buildings or parts of buildings that were mass produced and contained a defective product. *See Schipper v. Leavitt & Sons, Inc.,* 44 N.J. 70, 207 A.2d 314 (1965); *Kriegler v. Eichler Homes, Inc.,* 269 Cal. App. 2d 224, 74 Cal. Rptr. 749 (1969)." *Id.* at 457, 654 P.2d at 350. And we concluded "a prefabricated building that must be assembled is a product where the seller-manufacturer may be found strictly liable for injuries caused by a defective component part." *Id.*

Yet, an identified component of a prefabricated building can hardly be likened to "a portion of the leased or rented premises . . . [that] prove[s] defective." We perceive no good reason here to lend a more expansive meaning to "product"

---

[5] *Restatement (Second) of Torts* § 402A (1966) reads:

§ 402A. *Special Liability of Seller of Product for Physical Harm to User or Consumer.*

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

than we did in *Kaneko,* and we find no error in the circuit court's ruling that Amfac was entitled to judgment on the cause of action purportedly premised on our rule of strict liability in tort.

## IV.

The final thesis advanced by the plaintiff is that further error was committed in the summary disposition of the case because "[a] disputed question of fact exist[ed] as to whether the Hawaii implied covenant of safe accom[m]odation and habitability was breached." We would agree *Lemle v. Breeden,* 51 Haw. 426, 462 P.2d 470 (1969), and *Boudreau v. General Electric Co.,* 2 Haw. App. 10, 625 P.2d 384, *cert. denied,* 63 Haw. 675 (1981), furnish grounds for arguing a "warranty of habitability and fitness for the purposes intended is a just and necessary implication" from a hotel operator-guest relationship. 51 Haw. at 433, 462 P.2d at 474. But we do not reach the question of whether the rule in *Lemle v. Breeden* should be extended to the relationship here. Though plaintiff asserted in a memorandum submitted to the court below that Amfac breached a warranty of habitability, the complaint itself articulated no claim for relief premised on such breach. Thus the question was never put to the circuit court for decision.[6]

The summary judgment on the portion of the complaint averring a cause of action sounding in negligence is reversed, and the case is remanded for proceedings not inconsistent with this opinion.

*James Krueger (Virgil James Wilson, III* with him on the briefs; *Kevin W. Geer* with them on opening brief; *James Krueger,* A Law Corporation, of counsel) for plaintiff-appellant.

*Roy A. Vitousek, III (David Schulmeister* with him on the brief; *Cades, Schutte, Fleming & Wright,* of counsel) for defendant-appellee Amfac, Inc.

---

[6] Summary judgment on those portions of the complaint purporting to state a claim for "intentional injury" was also proper.

558

DISSENTING OPINION OF CIRCUIT JUDGE SPENCER

I respectfully dissent. I would affirm the trial court's summary judgment in favor of the defendant.

The trial court initially granted a summary judgment motion in favor of defendant on all issues except negligence with respect to maintenance and location of the subject towel rack. Subsequently, the trial court granted a second summary judgment motion filed by defendant based on the special statute of limitation set forth in HRS § 657-8, and the complaint was dismissed.

Pending the appeal of this case, HRS § 657-8 was declared unconstitutional by this Court in *Shibuya vs. Architects Hawaii Ltd.,* 65 Haw. 26, 43-44, 647 P.2d 276, 288 (1982). However, this Court has repeatedly held that where the trial court has reached a correct conclusion, its decision will not be disturbed on the ground that the reason it gave for its action was erroneous. *Black Construction Corp. v. Agsalud,* 64 Haw. 274, 285 n.20, 639 P.2d 1088, 1095 n.20 (1978). Thus, if a summary judgment for the defendant is a correct conclusion, this Court may affirm the decision even though the trial court's reasoning, viz., the applicability of HRS § 657-8, was erroneous.

I certainly agree with the majority opinion that there is a duty owed by a hotel operator to maintain a bathroom adjoining a hotel room in a reasonably safe condition for the use of the guest. I also agree that whether the duty was breached is ordinarily a question for the trier of fact to determine.

However, in an appropriate case, this Court can and should decide as a matter of law whether a duty has been breached. See, e.g., *Pickering vs. State,* 57 Haw. 405, 557 P.2d 125 (1976); *Carreira vs. Territory,* 40 Haw. 513, 516 (1954).

The material facts in this case are undisputed. The plaintiff, an adult, while rising from a sitting position after using the hotel room toilet, grabbed a towel rack affixed to the adjacent wall and used it in an attempt to pull herself to a standing position. The rack tore loose from the wall causing plaintiff to fall and sustain injuries. The subject towel rack had the appearance of a wall fixture designed to hold towels and plaintiff had previously used it for this purpose. It did not have the appear-

ance of a fixture designed to be a handrail.

In *Friedrich v. Dept. of Transportation,* 60 Haw. 32 at 36, 586 P.2d 1037 (1978), this Court said in connection with a negligence suit against the State for injuries suffered by a plaintiff who fell into shallow water from a State-owned pier:

> The duty of care which the State, as an occupier of the premises, owed to appellant traditionally does not require the elimination of known or obvious hazards which appellant would reasonably be expected to avoid. Restatement (Second) of Torts § 343A (1965).

A pertinent analysis set forth in 2 Harper and James, *Torts,* 327.13 (1956), quoted with approval in *Friedrich v. Dept. of Transportation, supra,* 60 Haw. at 36 nt. 1, is as follows:

> People can hurt themselves on almost any condition of the premises. That is certainly true of an ordinary flight of stairs. But it takes more than this to make a condition unreasonably dangerous. If people who are likely to encounter a condition may be expected to take perfectly good care of themselves without further precautions, then the condition is not unreasonably dangerous because the likelihood of harm is slight. This is true of the flight of ordinary stairs in a usual place in the daylight. It is also true of ordinary curbing along a sidewalk, doors or windows in a house, counters in a store, stones and slopes in a New England field, and countless other things which are common in our everyday experience. It may also be true of less common and obvious conditions which lurk in a place where visitors would expect to find such dangers. The ordinary person can use or encounter all of these things safely if he is fully aware of their presence at the time. And if they have no unusual features and are in a place where he would naturally look for them, he may be expected to take care of himself if they are plainly visible. In such cases it is enough if the condition is obvious, or is made obvious (e.g., by illumination). The knowledge of the condition removes the sting of unreasonableness from any danger that lies in it, and obviousness may be relied on to supply knowledge. Hence the obvious character of the condition is incompatible with negligence in maintaining it. If plaintiff happens to be hurt by the condition, he is barred from recovery by lack

of defendant's negligence towards him, no matter how careful plaintiff himself may have been. If an invitee has a cramp at the head of a flight of stairs and falls down it, his own freedom from fault will not help him to a recovery. 2 Harper and James, Torts, § 27.13 (1956).

In my opinion the defendant in the present case was perfectly reasonable in assuming that the plaintiff would know better than to use a towel rack as if it was designed and intended to support the weight of a person. The defendant cannot be said to have breached a duty of reasonable care owed to plaintiff merely by maintaining a towel rack, on a wall next to the toilet, which could not support the weight of a person.

I believe the material issues of fact are undisputed and the absence of negligence ought to be decided in favor of the defendant as a matter of law.